All right, our next case for this morning is Ronald Forgue against City of Chicago. Good morning, Your Honor, and may it please the court. My name is Mary Grebe and I represent the appellant in this case, a retired Chicago Police Lieutenant, Ronald Forgue. We're here today to ask this court to reverse the dismissal of Lieutenant Forgue's complaint on a 12b6 motion to dismiss. This case stems from a pattern of harassment against Lieutenant Forgue as he ended the last few years of his career with the police department, stemming from beat officers targeting his sons to higher-ups in the Human Resources Department and in the administration of CPD itself targeting him. Turning to the first issue, the Equal Protection Class of One claim, there were several points I'd like to make. I'm going to say that that's an uphill slog for you after Enquist. I disagree, Your Honor. I think that Enquist makes clear, and the Supreme Court in Enquist makes clear, that Class of One claims are barred as they relate to public employment when the government is an employer versus the sovereign. In our case, Lieutenant Forgue's Equal Protection Class of One claim stems from the fact that his children, some of whom were minors for some of the events, but 18 or 19 for other events, were targeted by individual police officers for false arrests, for detentions, for citations, for field stops. Here's the rock in the hard place I think you're facing. On the one hand, as you just said, Enquist focuses on the public employment context and recognizes that public employers, you know, shouldn't have every possible case blown up into a First Amendment case. On the other hand, in order to have an equal protection case, you need something beyond just a matter of private concern. You know, I'm sure Lieutenant Forgue did not want his sons to be harassed by the police, but why is that a matter of public concern? And if it is a matter of public concern, why doesn't that throw you right back into Enquist? To clarify, the Equal Protection Class of One claim stems from the acts taken against Lieutenant Forgue's sons. The First Amendment Retaliation claim stems more from the complaints Lieutenant Forgue made about his sons to IAD and to IPRA. The complaints of the First Amendment Retaliation, we argue that he steps away from being a public employee when he makes these complaints about what is happening to his sons, the kind of police mistreatment of his sons at his home or in his neighborhood. Why aren't they the proper plaintiffs if they're the ones who've been harassed? They could certainly bring their own lawsuit. They have not. Lieutenant Forgue has brought the lawsuit based on the argument that his children have been harassed as a way to target him, much in the way that in the Gynowski case, where this court did allow a Class of One claim to go forward, the plaintiff in that case was targeted by, I think it was eight to ten officers of a specific unit for giving him bogus parking tickets over the span of a couple days. But they were his bogus parking tickets, not like they were his family members bogus parking tickets. That's true, Your Honor. That's true. But it did reflect a campaign of harassment against him. Speaking to the First Amendment Retaliation claim, we recognize that it is also an uphill battle, that there are cases saying that a police officer has a duty to report misconduct. However, this case is distinct from those cases that the city cites in their brief, and certainly Judge Noerger relied on the Kubiak case in the lower court's decision. Lieutenant Forgue was also the father of these young men that were harassed by police. So are you arguing really that we've got to dig into his motivations for the report, and is that consistent with the law? Not necessarily his motivations, but just who he was when he made the reports. That there is some separation between him being a police officer, and in fact at the time a lieutenant, a supervisory officer, and being a father of these young men that were targeted by the police. Lieutenant Forgue also complained about a Facebook page that was put up mocking him, calling him an IAD informant, with a photo of him and an IAD informant title on top of the page. He's also spoke out about that. What I want you to spend just a minute on actually is whether there's any evidence that is alluded to, I guess this goes out on 12b-6, but any reason to believe that the retirement identification card policy is somehow different from what's printed in the book. I mean, what we read is that the determination of good standing is in the discretion of whomever, the chief of police or somebody. And it seems to me you're arguing that that's at best an incomplete description, that in fact the concept of good standing has some objective criteria. Well, the fact that this was dismissed on a 12b-6 motion is part of the problem here. We read the general order. My client, Lieutenant Forgue, had an understanding of what the policy was, that if you retired and you were in good standing, you would get your retirement identification card. So what does good standing mean? And that's exactly the point. His understanding was that he was retiring in good standing. And there's nothing delineated as to why he was not in good standing, why he did not get the card, and who made that decision. And that's exactly why we brought the procedural due process claim. We believe it should be reversed so that he can at least conduct discovery as to what exactly, who made the decision not to give him this card, what the criteria are, and whether the policy conflicts with what's actually written in the general orders. So this is essentially a Roth-Sinderman kind of point, that there's enough of a property interest. It may not be, you know, like a full-blown property interest. It could be taken away, but there's an understanding that everybody, that if you were to look at custom and practice in the police department, I guess I'll put it that way, you would see that people who, you know, don't have too many disciplinary notations on their record, there's something, I'm just grasping for what it is you're thinking that you would prove. That everyone, to my client's knowledge, everyone gets this retirement identification card. And if he doesn't get it, is he right now being impeded from getting health insurance, for example? He is, yes. Okay, so he's suffering a tangible deprivation. That's correct, Your Honor. It's also implicated his ability to get a concealed carry license because there is some sort of hold on his application with the state police. And because he is in law enforcement and he still would like to continue going on in law enforcement, even though he's retired from the police department, that has affected him as well. Your Honor, if I could just make one more point about the complaints that are made. Some of Lieutenant Forgay's complaints were made to the Internal Affairs Division. Some were made to the Independent Police Review Authority. There's case law concerning internal complaints not necessarily being made as a private citizen, but the cases that do find that a government employee spoke out as a private citizen look more to whether those complaints were public. The Independent Police Review Authority is where residents of Chicago can go to complain about police misconduct, and that is where Lieutenant Forgay went to make at least some of his complaints. So you would draw a distinction between the ones he pursues an internal path, the IAD ones, and the IPRA ones? Yes, there's that distinction. There's also the distinction that he speaks out as a father and as a supervisor. So he's not trying to reform the Chicago Police Department. He just wants his sons to stop getting harassed. Well, I suppose he wants to do both. But when he complains to the police department, he is trying to get his sons to stop being harassed. If there are no other questions, I'll reserve the rest of my time for rebuttal. All right, that's fine. Thank you. Mr. Hoopert. May it please the Court, Your Honors. The district court properly dismissed Mr. Forgay's federal claims in this case. So the part that really worries me is this retirement identification card because I can certainly see the injury in fact there, and I can see, reading the complaint generously to Lieutenant Forgay, that if everybody else gets good standing determinations, this may not be the unfettered discretion. You know, I don't like the blue tie Mr. Hoopert is wearing, so I'm not going to give him a good standing card, and I do like the dress that somebody else is wearing, so I'm going to give her a good standing card. As I understand it, his allegation is that there is in fact a custom in the police department and that he wants the opportunity to show that there is some singling out going on. Well, regardless of the custom, Your Honor, Mr. Forgay concedes in his complaint that as a matter of the collective bargaining agreement between the police officers and the city that this determination of good standing, which is a necessary prerequisite to eligibility for the card, lies and is rested entirely within the discretion of the superintendent. Right, but to say in the discretion, I can think of any number of things that this court would say lie in the discretion of the district courts, granting or denying a preliminary injunction, admitting evidence, and the like. But to say discretion doesn't always mean unfettered and arbitrary discretion. To say discretion sometimes means that there's a zone within which the actor with discretion can take action and there's a zone beyond that where the discretion would be abused. To take the simple kind of example, if the police department, in its discretion, happened, unfortunately, to have somebody who was not fond of Hispanic police officers, you couldn't deny all the Hispanic police officers a retirement card and just say, well, it was in my discretion. So there's a concept that discretion can be abused. And if the discretion has, in fact, regularly been exercised to give people the ID cards, don't we need a little more explanation? Doesn't the case get to at least first base, if not second or third? Respectfully, Your Honor, I don't believe so, where Mr. Forgay has conceded that this is an issue of discretion. But he didn't concede that discretion means unreviewable. He just said, you know, that something like an abuse of discretion standard is what ought to apply. That's correct, Your Honor. We are here on a motion to dismiss. But given that Mr. Forgay concedes that under the collective bargaining agreement, this is an issue of discretion for the superintendent, that there is normally under the collective bargaining agreement, Mr. Forgay doesn't identify the exact provisions that are at issue, but there is a grievance procedure that's available to him under the collective bargaining agreement if he disagrees with the superintendent's use of discretion in these type of matters. And he's not made any allegations that he proceeded through that process to challenge the abuse of discretion. But that's the next step, right? That would be a case that moves past the 12B6 level. And you might bring up as a defense that he didn't avail himself of those provisions of the collective bargaining agreement. But normally you don't have to anticipate defenses in complaints. That is true, Your Honor. But you do have to plead the elements of the claim. And one of the elements of the due process claim is that there's an entitlement which requires a nondiscretionary rule. It's based on a rule that vests the property interest in the person. And where there's discretion, that simply is not a matter of a due process claim at that stage. Marion Sinderman cases, as well as other cases in this circuit, obviously those are Supreme Court decisions, have recognized that even when there's some discretion, so for example an interest in collegiate employment for somebody who's untenured, so they don't have that formal interest, is nonetheless entitled to a certain level of due process if there's an understanding, if there are less formal protections available. You're sort of telling us to throw Sinderman, Marion Sinderman, out the window. No, I don't believe that, Your Honor. Here where there's a clear concession that this is discretionary and that it's the… You keep saying that and I keep trying to tell you that just because he concedes that discretion is involved isn't the end of the story. You think it is the end of the story. Okay, maybe that's your position. I don't think it is the end of the story.  Well, Your Honor, here there's not even an allegation in the complaint that the superintendent abused his discretion. There wasn't even an allegation that Mr. Forgay was in good faith. Isn't that the whole point of the complaint, I should have had my card? Well, he says that he should have had the card, but he doesn't even make the allegation in the complaint that he was in fact in good standing. It wasn't even until the reply brief that he made that barest assertion. He hasn't made any allegation that the superintendent himself abused his discretion in making a decision that he wasn't in good standing. He never made that specific allegation even until the reply brief. He's waived that by not raising it until the reply brief. So there's nothing here to suggest that Mr. Forgay was improperly denied this card on the basis of an abuse of discretion, even by his own allegations. He simply says that he's entitled to this card without even addressing the exercise of discretion. Well, he says actually the denial of the retired identification card was designed and intended to punish the plaintiff for obtaining a remedy in law, to punish, impede, respect. In other words, he's saying that the card was denied for reasons just as impermissible as I'm sure we both agree they would have been if it had been, I don't like people from this racial group or this ethnic group or this religious group. Surely you would not defend the ability of the superintendent to deny the card on one of those bases. And he's saying that it's a comparable constitutional basis, which is also not one of the permissible ways that discretion can be exercised. But, Your Honor, it's true, but none of those types of allegations are. I mean, the allegation that he – I mean, I just read from his complaint. It's right there. So it's in there. I mean, but again, he doesn't even allege that he was in good standing. He says there may be some motive, but he doesn't even allege the basic that he was, in fact, in good standing. Isn't that a rational inference? We take inferences in the light most favorable to the pleader in these situations. I don't know why you wouldn't infer when he says you didn't give me this card for a bad reason that otherwise I would have gotten it. What's the point otherwise? Well, Your Honor, again, we will take the – our position is that here, in order for there to be an entitlement, there had to be a nondiscretionary rule. This was a discretionary action, and that there's not even an allegation that he wasn't in good standing. Okay. So your position does require us to allow the police officer just not to give cards to members of a particular ethnic group, because it's in his discretion, after all. No, Your Honor, because in that case, there would be – I believe that would be a separate constitutional violation to deny someone that right based on their ethnicity. Correct. But he's alleging a separate constitutional violation here. Well, he's alleging a due process claim only as to the retirement card. I mean, he also brings up the retirement card within the context of the equal protection. And the retaliation for the exercise of his First Amendment rights. Well, only on the equal protection claim, I believe, he identifies the retirement card. He doesn't actually identify the retirement card on the First Amendment claim. In his brief, he limits the First Amendment discussion to the Facebook page complaints and to the retaliation against his sons, but he doesn't actually – he addresses the retirement card only within the equal protection claim. And, again, the retirement card decision within the equal protection context is clearly within that classic case of employer discretion that falls within ANQUIST and is barred from an equal protection claim in that case. He has it under procedural due process. He has it under equal protection. That's right, Your Honor. I'll have to look further. But he does come back to it in a number of places. Okay. You can proceed if you have anything further to say. Well, just to briefly address the other claims, then, Your Honors, if I may. The district court properly dismissed Mr. Forgay's First Amendment retaliation claim because a public employee's speech is only protected by the First Amendment where the employee speaks as a private citizen on a matter of public concern. And here Garcetti makes clear that speech pursuant to official employment duties is not protected private speech. So your position has to be, with respect to the harassment of the sons, that there's just no way to leave the badge at home. I mean, there's no way to divest yourself even though it's a purely privately motivated complaint. Well, Your Honor, on the two prongs of this test, on the private speech prong, there's no way to divest it because there is a duty for any police officer, especially a supervising officer like Mr. Forgay, to report any misconduct that he observes, regardless of where it occurs, when it occurs, to whom it occurs. He has that duty. So this falls under Garcetti. As to the second prong of whether this was public concern versus a private concern, all of this was animated when we look at the context, the form, and the context of the speech by Mr. Forgay's private concerns about his own reputation and alleged harassment of his family. Nothing about the public at large. No attempts to bring this to the public's attention. All of this was a matter of private concern. Then just quickly on the equal protection claim, the district court also properly dismissed Mr. Forgay's equal protection class of one claim based on ANQUIS because ANQUIS held that a class of one claim in the employment context is simply barred. And Mr. Forgay expressly alleged here in his complaint that his allegations that he says form this complaint, the harassment of his sons and the denial of his retirement card are things that involve his employment. He says specifically in paragraph 46 of the complaint that the reasons that his sons were targeted for harassment was that it was because of Mr. Forgay's workplace conduct and reputation. Again, this is not a claim brought by his sons directly. This claim is here only in this court because Mr. Forgay says it arose out of his employment and was retaliation for his workplace conflict. And for that reason, it's barred by ANQUIS. Now, if there are no other questions, Your Honors, we would respectfully ask this court to affirm. Thank you. All right. Thank you very much. Anything further, Ms. Greene? Yes. Lieutenant Forgay did attempt to bring public attention by speaking to IAD and speaking to IPRO about a matter of public concern. His sons are members of the community. The targeting or the harassment of his sons affects all members of the community. Similarly, the fact that Lieutenant Forgay was a whistleblower, was attempting to be a whistleblower, brings attention or tried to bring attention to the community of the police covering up wrongdoing. Another point, we're getting a little far afield with Mr. Lieutenant Forgay having to file grievances and exhausting administrative remedies. Again, this is on a 12B6 motion. The policy of the police department was to- How old were his sons? They were about 15, 16, and 17, and they aged in 2012, 2013. Ms. Greene, did he exercise any exhaustion with regard to the denial of the card? I'm not aware that he did, Your Honor, other than attempting to try to figure out why his card was being denied. He can reflect all he wants on his own, but after not receiving it, did he take any action? Well, this lawsuit was pending, and it was a claim in this lawsuit. So this lawsuit itself and also his attempts to speak to people in the HR department to find out why he was not given his card. But his understanding was that he was entitled to the card, at the very least a notice or hearing prior to being denied the card itself. And then one final point that I hope I can clarify. Lieutenant Forgay was attempting to improve the police department and stop police misconduct, and that's why he was targeted and why his sons were harassed. The harassment of the sons is what's actionable here. And we'd ask this court to let Mr. Lieutenant Forgay have his day in court and reverse the decision. Thank you. All right, thank you. Thanks to both counsel. We'll take the case under advisement.